IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

WILLIAM H. MCDERMOTT,

              Plaintiff,

                                   Civ. Action No.
                                   5:02-CV-0607 (NAM/DEP)

    vs.

GREAT AMERICAN ALLIANCE
 INSURANCE CO.,

              Defendant.

_____

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF:

OFFICE OF WILLIAM S. ANDREWS    WILLIAM S. ANDREWS, ESQ.
217 South Salina Street
Sixth Floor
Syracuse, NY 13202

FOR DEFENDANT:

BOEGGEMAN, GEORGE LAW FIRM    GEORGE S. HODGES, ESQ.
46 Columbia Street
Albany, NY 12207

FORAN, GLENNON LAW FIRM         THOMAS B. ORLANDO, ESQ.
150 South Wacker Drive
11th Floor
Chicago, IL 60606

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

This is an action brought by plaintiff William H. McDermott seeking reimbursement for losses claimed by McDermott to be covered by a policy issued by defendant Great American Alliance Insurance Co. ("GAA"). The parties have requested the court's assistance in the action, which has tentatively been settled, in order to permit implementation of their agreement. The dispute currently before me centers upon the assertion by plaintiff's counsel of a statutory charging lien upon the proceeds to be paid to his client under the terms of the settlement.

Having reviewed the matter carefully and, with their agreement, having determined that the exercise of ancillary jurisdiction to address the parties' fee dispute is appropriate, I find that plaintiff's counsel is entitled to a charging lien in the amount of $9,800.44, to be impressed as against the settlement proceeds.

I.   BACKGROUND

This action, commenced by McDermott in New York State Supreme Court but subsequently removed by GAA to this court on May 2, 2002, was initiated to recover for losses incurred in connection with a fire on August 11, 2001 which heavily damaged property owned by McDermott,

and rented to and occupied by a chapter of the Pi Kappa Phi fraternity. In his complaint plaintiff asserts his entitlement to reimbursement for those losses based upon the issuance by GAA, through an authorized agent, of a policy insuring the premises and its contents.[1] Plaintiff's complaint sought recovery of $792,641.11, representing unpaid claims for building damage, loss of contents, lost income, and debris removal, subject to adjustment for an applicable deductible, and to reflect a partial payment made under the policy.

After a period of pretrial discovery, GAA moved for summary judgment seeking a court determination of the applicable policy limits governing the plaintiff's claim. Dkt. No. 19. That motion resulted in the issuance on September 30, 2005 by now-Chief District Judge Norman A. Mordue of a decision and order affixing the limits of the policy. Dkt. No. 31. The matter was thereafter set down for trial, and ultimately was to have been heard by me on consent of the parties pursuant to 28 U.S.C. § 636(c). *See* Dkt. No. 50.

Shortly before the trial was to have commenced, the parties advised

---

[1] The policy in dispute was apparently written as a master policy issued to Fraternity Risk Management Trust, an unincorporated association of twelve separate member fraternities, with plaintiff listed as an additional named insured.

3

the court that they had entered into a settlement resolving the remaining issues in the case. *See* Dkt. Entry dated 5/4/06. The parties later reported, however, that a controversy had arisen regarding the settlement, and in particular the payment to be made by GAA pursuant to its terms. At the center of the dispute is a claim by plaintiff's attorney to entitlement to earned but unpaid fees and incurred disbursements totaling $9,765.09 and the contemplated issuance by defendant of a proceeds check made payable jointly to McDermott and his counsel. *See* Text Entry dated 6/23/06.

During a telephone conference conducted by the court and involving, as participants, both attorneys of record as well as the plaintiff, it was reported that McDermott objected to having his attorney listed as a joint payee on the settlement check, and additionally disputed the remaining balance claimed by his counsel to be owing. I therefore ordered briefing of the issue and, with consent of the parties, agreed to exercise the court's ancillary jurisdiction and decide the outstanding fee dispute.[2] Plaintiff and his counsel have both submitted briefing to the

---

[2] During the conference the parties agreed that the settlement proceeds would be forwarded by defendant to plaintiff's counsel, who would then deposit in his client escrow account the disputed amount of $9,765.09, and forward the balance of the proceeds to McDermott.

court regarding the issue, which is now ripe for determination.[3]

## II. DISCUSSION

### A. Jurisdiction

Before turning to the merits of the dispute now before me, I must first determine whether the court has jurisdiction to entertain the parties' joint request for its resolution.

It is well-established that as the forum in which this action is pending this court, in its discretion, may exercise ancillary jurisdiction to hear and resolve a fee dispute which relates directly to the action. *Joseph Brenner Assocs., Inc. v. Starmaker Entertainment, Inc.*, 82 F.3d 55, 58 (2d Cir. 1996) (citations omitted); *Casper v. Lew Lieberbaum & Co., Inc.*, No. 97CIV.3016, 1999 WL 335334, at *8 (S.D.N.Y. May 26, 1999) (citing, *inter alia*, *Misek-Falkoff v. International Bus. Machs. Corp.*, 829 F. Supp. 660, 663 (S.D.N.Y. 1993)). The exercise of ancillary jurisdiction to address matters incidental to a case or controversy before it is, in part, the product of a need for a court "to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees[.]" *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379-80, 114

---

[3] Defendant understandably has taken no position with regard to the pending fee dispute.

S. Ct. 1673, 1676 (1994); *see Garcia v. Teitler*, 443 F.3d 202, 208 (2d Cir. 2006) ("At its heart, ancillary jurisdiction is aimed at enabling a court to administer 'justice within the scope of its jurisdiction.'") (citing and quoting *Morrow v. District of Columbia*, 417 F.2d 728, 737 (D.C. Cir. 1969)). The exercise of this inherent power is particularly appropriate in a case such as this, where resolution of the fee parties' dispute impacts upon distribution of settlement proceeds. *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841, 843-44 (2d Cir. 1977).

In this instance, particularly in view of the court's familiarity with the case and the steps taken by plaintiff's counsel to pursue his client's claims, I find that my discretion should be exercised in favor of finding ancillary jurisdiction and addressing the parties' dispute.

  B. <u>Merits</u>

    1. <u>Entitlement to Charging Lien</u>

In New York, an attorney who ceases to represent his or her client but has rendered services for which payment has not yet been received has two forms of recourse against non-payment, other than commencement of a plenary action – one derived from the common law, and the other created by statute. *Schneider, Kleinick, Weitz, Damashek &*

*Shoot v. City of New York*, 302 A.D.2d 183, 186, 754 N.Y.S.2d 220, 223 (1st Dept. 2002).  Under the first, generally referred to as a retaining lien and recognized at common law, an attorney asserting a claim for outstanding, unpaid fees and disbursements is permitted to retain any of the client's papers which came into the lawyer's possession as a result of the professional relationship.  *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir. 1991); *Pomerantz v. Schandler*, 704 F.2d 681, 683 (2d Cir. 1983); *Casper*, 1999 WL 335334, at *8.  Such a retaining lien "attaches when the action is commenced and remains in force when an attorney is discharged without cause."  *Casper*, 1999 WL 335334, at *8 (citations omitted)*.*  Absent exigent circumstances including, for example, when the client makes a clear showing of need for the withheld papers and that prejudice would result from denial of access, a court should not require relinquishment of papers subject to a retaining lien.  *Id.*  There is no indication in this case that a retaining lien is claimed, or that plaintiff's counsel is retaining and refusing to surrender to McDermott any client documents.

    The second measure of protection, one which is squarely implicated in this case, arises by statute which provides, in pertinent part, that

7

> [f]rom the commencement of an action . . . in any court . . . the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come[.]

N.Y. Judiciary Law § 475. That section goes on to provide that "[t]he court upon the petition of the client or attorney may determine and enforce the lien." *Id.*; *see Casper*, 1999 WL 335334, at *5. "By its terms, a charging lien attaches to the client's ultimate recovery in the same case." *Casper*, 1999 WL 335334, at *8. The right to assert a charging lien under section 475 is relinquished only when the attorney is terminated by the client for cause, or withdraws without proper justification. *Cruz v. Olympic Trails Bus Co.*, No. 99 CIV. 1086, 2002 WL 1835440, at *4 (S.D.N.Y. Aug. 8, 2002) (citations omitted); *Casper*, 1999 WL 335334, at *5. Since, in this instance, the termination of the relationship between the plaintiff and his counsel appears to stem from irreconcilable differences relating to the fee dispute, rather than anything that would rise to a level sufficient to sustain a finding of legal cause for the termination, this limited exception does not apply.

      2.    <u>Quantification of Charging Lien</u>

Having found that plaintiff's counsel is entitled to assert a charging lien, the court must next determine the extent of that lien. N.Y. Judiciary Law § 475; *see Casper,* 1999 WL 335334, at *5-*7. That determination must be made not based upon the parties' agreement governing the attorney-client relationship, but instead informed by principles of *quantum meruit*, focusing upon the reasonable value of the services provided. *Casper,* 1999 WL 335334, at *5-*7. Utilizing this methodology, the court must gauge the effort expended by counsel on plaintiff's behalf and objectively place a value on those services. *Bradley v. Consolidated Edison Co. of New York & its Subsidiaries*, No. 83 Civ. 7504, 1991 WL 156368, at *4 (S.D.N.Y. Aug. 7, 1991). When engaged in that exercise, the court is not bound by the parties' retainer agreement, although its terms may nonetheless be considered as relevant to the overall *quantum meruit* analysis. *Id.*

Among the factors typically considered by courts when establishing an appropriate *quantum meruit* award are

> the time reasonably required to perform the services rendered, the quality of performance rendered by counsel, the amount at issue in the case, the qualifications of counsel, and the results of his performance, to the extent known.

*Casper*, 1999 WL 335334, at *6; *see also Sequa Corp. v. GBJ Corp.*, 156 F.2d 136, 148 (2d Cir. 1998).[4]

In his quest for quantification of his charging lien, plaintiff's attorney seeks compensation for invoiced fees, calculated at an hourly rate of $105, and disbursements totaling $9,765.09.[5] Plaintiff's application covers a period from October of 2005 through May 4, 2006, which

---

[4] Some courts have found it appropriate in circumstances such as those now presented to look for guidance to D.R. § 2-106 of the Disciplinary Rules of the Code of Professional Responsibility, which lists, among the factors to be considered in establishing a reasonable fee, the following:

> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent or made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fee customarily charged in the locality for similar services.
>
> (4) The amount involved and the results obtained.
>
> (5) The time limitations imposed by the client or by circumstances.
>
> (6) The nature and length of the professional relationship with the client.
>
> (7) The experience, reputation and ability of the lawyer or lawyers performing the services.
>
> (8) Whether the fee is fixed or contingent.

22 N.Y.C.R.R. § 1200.11(b).

[5] The invoice submitted by plaintiff's counsel setting forth an itemization of the services and including the attorneys' fee and disbursement calculations suggests in its heading that his time was to be billed at $125 per hour. *See* Dkt. No. 54, Attachment A, at 1.

10

encompasses the interval between the issuance of now-Chief Judge Mordue's memorandum decision, through preparation for trial, and ultimately leading up to the successful negotiation of a settlement.

I note that during the relevant time period, the parties were required to supply the court with various information and documents regarding a potential trial, and additionally a scheduling order was issued permitting further discovery and the filing of motions, establishing a motion filing deadline of January 31, 2006 and a trial ready date of March 31, 2006. Also occurring within the period in question was the filing of a motion by the defendant seeking a stay of litigation, which motion was comprehensively briefed and orally argued, as well as a cross-motion by the plaintiff for leave to amend his complaint. The court also conducted conferences with the parties over this period. Against this backdrop, and after carefully reviewing the disputed invoices, the court does not find expenditure of 90.83 hours, billed apparently in five minute increments, to be patently excessive.[6]

---

[6] One of plaintiff's complaints concerns the fact that while engaged in settlement negotiations, his counsel also expended effort in preparing for trial. The court notes, however, that absent the absolute certainty of a settlement, it would arguably have been irresponsible for plaintiff's attorney to ignore the requirements of preparing for trial on the assumption that a settlement would occur. Accordingly, I find that this complaint provides no basis to reduce the amount of fee to be affixed in this

Similarly, the court does not view the invoiced hourly rate of $105 per hour as unreasonable. Indeed, in many cases litigated by attorneys within this geographical locale this court, principally addressing attorney fee applications under fee shifting statutes, has approved compensation at rates as high as $210 per hour for partners and $150 per hour for associates. *See*, *e.g.*, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, No. 03-CV-502, 2005 WL 670307, at *6 (N.D.N.Y. Mar. 22, 2005) (Homer, M.J.), *adopted in full*, 419 F.Supp.2d 206 (N.D.N.Y. 2005) (Mordue, J.).

When evaluated in light of these considerations, as well as the result achieved – reportedly, a $180,000 settlement – the disputed fee is, in the court's view, reasonable.[7,8] Based upon the court's calculation, I therefore find that plaintiff's attorney is entitled to the following compensation:

---

case.

[7] Having carefully reviewed the itemization provided by plaintiff's counsel regarding the services rendered, as well as the court's notes and docket sheet to reflect the extent of court proceedings during the disputed time, I find that if, as his client contends, the amount of time expended by him was excessive, it was only slightly so. In any event, this potential factor is more than amply offset by the fact that plaintiff's counsel is billing at a rate of $105 per hour, well below both the prevailing norms in this district and this court's assessment regarding the reasonable value, on an hourly basis, of his service.

[8] Plaintiff does not appear to challenge his attorney's assertion of entitlement to disbursements.

Fees

| Period | Hours | Fees |
|---|---|---|
| 10/3/05 - 11/15/05 | 1910 minutes | $3,342.50 |
| 11/16/05 - 1/6/06 | 1730 minutes | $3,027.50 |
| 2/1/06 - 5/4/60 | 1830 minutes | $3,202.50 |
| Total Fees | | $9,572.50 |

Disbursements

| Period | Disbursements |
|---|---|
| 10/3/05 - 11/15/05 | $115.75 |
| 11/11/05 - 1/6/06 | $0 |
| 2/1/06 - 5/4/06 | $112.19 |
| Total Disbursements | $227.95 |

Accordingly, I find that applying the relevant factors and making a *quantum meruit* analysis the amount sought, in the total sum of $9,800.44 in fees and disbursements, is fair and reasonable, and therefore affix the extent of counsel's charging lien in that amount.

IV.   SUMMARY AND ORDER

Having considered the relevant factors and concluded that the services rendered, compensation for which is now sought, were

necessary and capably performed and the hours claimed to have been expended are not unreasonable, and further that the hourly rate charged by plaintiff's counsel is extremely modest by comparison to other attorneys of similar experience in the community, I conclude that the extent of the charging lien to be imposed as against the settlement proceeds in this case is in the sum of $9,800.44. Accordingly, it is hereby

ORDERED as follows:

1) Plaintiff's counsel, William S. Andrews, Esq., has appropriately claimed and is entitled to a charging lien, pursuant to N.Y. Judiciary Law § 475, against any recovery in this action, including settlement proceeds, in the amount of $9,800.44.

2) Attorney Andrews is entitled to *quantum meruit* recovery of said sum from the plaintiff.

3) Plaintiff McDermott is hereby advised that he may appeal this determination to the United States Court of Appeals for the Second Circuit within thirty (30) days of the entry of final judgment in the case.

4)	The clerk is directed to forward copies of this order to counsel for the parties electronically and to plaintiff, William McDermott, by first class mail.

Dated:	July 18, 2006
	Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\Civil\2002\02-CV-0607\dec&order.wpd